```
                IN THE UNITED STATES DISTRICT COURT FOR THE
                       EASTERN DISTRICT OF OKLAHOMA

ANGELA LYNN HARP,                )
                                 )
            Plaintiff,           )
                                 )
v.                               )    Case No. CIV-14-323-RAW-KEW
                                 )
CAROLYN W. COLVIN, Acting        )
Commissioner of Social           )
Security Administration,         )
                                 )
            Defendant.           )
```

## REPORT AND RECOMMENDATION

Plaintiff Angela Lynn Harp (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on February 2, 1963 and was 49 years old at the time of the ALJ's decision. Claimant completed her high school education and some vocational education. Claimant has worked in the past as a customer service representative. Claimant alleges an inability to work beginning November 30, 2009 due to limitations resulting from heart problems, diabetes, back pain, and arthritis.

3

**Procedural History**

On August 12, 2011, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On January 9, 2013, an administrative hearing was held before Administrative Law Judge ("ALJ") Doug Gabbard, II. On February 14, 2013, the ALJ issued an unfavorable decision on Claimant's applications. The Appeals Council denied review of the ALJ's decision on June 4, 2014. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she retained the RFC to perform her past relevant work. He also found Claimant could perform a range of light work with limitations.

**Error Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to properly evaluate the medical opinions of Claimant's treating

physicians; and (2) failing to provide a legally sufficient discussion of the medical evidence.

## Discussion of the Evidence

In his decision, the ALJ determined Claimant suffered from the severe impairments of ischemic heart disease, degenerative disc disease of the lumbar spine, and degenerative joint disease of the right knee. (Tr. 10). The ALJ also found Claimant retained the RFC to perform a range of light work. In so doing, the ALJ determined Claimant could occasionally climb, balance, stoop, kneel, crouch, and crawl. He also found Claimant required the ability to alternately sit and stand at will throughout the workday. (Tr. 13). After consultation with a vocational expert, the ALJ found Claimant could perform the representative jobs of appointment clerk and receptionist both of which he testified existed in sufficient numbers in the regional and national economies. (Tr. 20).

At step four, the vocational expert also testified that Claimant could perform her past relevant work as a customer service representative. The ALJ, therefore, determined Claimant could perform this work which was classified as sedentary, semi-skilled. (Tr. 19). Based upon these findings, the ALJ concluded Claimant was not disabled to warrant the award of benefits. (Tr. 21).

Claimant contends the ALJ failed to properly consider the opinions of her treating physicians. Specifically, Dr. Mark Rubertus completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) form on Claimant. He determined Claimant could lift/carry less than 10 pounds, stand/walk less than 30 minutes at one time and less than 2 hours in an 8 hour workday, and sit more than 2 hours at one time and at least 2 hours, but less than 6 hours in an 8 hour workday. (Tr. 982). Although Dr. Rubertus found Claimant did not need an assistive device to walk, he also determined Claimant could not walk a block at a reasonable pace due to arthritis in the right knee and nerve damage to the low back which caused pain. He also found Claimant could not sustain work performance on a continuous basis over 8 hours because she needed to move/change positions frequently due to pain, noting Claimant's diabetes was very labile and that she suffered from debilitating pain and weakness. Dr. Rubertus stated Claimant would have problems concentrating due to medications, writing that many of Claimant's medications caused mental slowing and somnolence. He estimated Claimant would be required to be absent from work due to her impairments or treatment three or more times per month. (Tr. 983).

The ALJ concluded Dr. Rubertus' opinion was entitled to

6

"little weight" because it was "not supported by medically acceptable clinical and laboratory diagnostic techniques, it is not supported by his own treatment notes, and it is not consistent with the record as a whole." (Tr. 17). Specifically, the ALJ found (1) Claimant rated her pain as a 4 out of 10 in November of 2012; (2) x-rays of the lumbosacral spine showed mild anterior wedge compression at T-12 multilevel spondylosis and degenerative disc disease at L4-L5, and mild patellofemoral degenerative changes of the right knee; (3) physical examination showed only mild tenderness across the low back with no specific bony tenderness and some tenderness of the right knee with no swelling or ecchymosis; and (4) Claimant reported no problem with attention or following instructions. (Tr. 17).

All of these observations stemmed from a review of the record from November of 2012. The ALJ failed to mention, however, that Claimant was found to be an "ill-appearing female who appears uncomfortable." Claimant also had increased tenderness into the left hip area and flexing the hip actually increased her low back pain. She also had palpable deformities of the right knee. (Tr. 984). X-rays of her left hip revealed no fracture but showed some bone thinning and osteopenia. Her right knee x-ray indicated bone spurs to lateral tibial plateau and narrowing of the medial joint

7

line. (Tr. 985).

The ALJ referenced findings throughout the medical record of multi-level degenerative disc disease with L4-5 neuroforaminal stenosis, lumbar muscle spasms, back pain aggravated by straight leg raise testing and adduction across midline, decreased lumbar flexion and extension mobility, right knee swelling and deformities, use of a walker, and multiple falls, the ALJ did not connect these findings as being supportive of Dr. Rubertus' opinion. (Tr. 15-19, 346, 776, 939-40, 943, 984, 994, 996, 998, 1000).

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still

entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

9

The ALJ's determination that Dr. Rubertus' opinion was entitled to "little weight" effectively resulted in a finding of no weight since he did not include his limitations within the RFC determination. The bases for the rejection of Dr. Rubertus' opinion cited by the ALJ failed to account for all of the supporting medical evidence which would have entitled the opinion to additional weight. While the ALJ cited the Watkins factors, it is not apparent that he actually applied them. On remand, the ALJ shall include an analysis of the evidence in the record which actually supported Dr. Rubertus' findings before rejecting his opinion wholesale.

Claimant also contends the ALJ failed to properly assess the opinion provided by another treating physician, Dr. Gerald Rana. Dr. Rana provided a medical source statement on Claimant's limitations on December 12, 2012. He determined Claimant could lift/carry less than 10 pounds occasionally and frequently, stand/walk less than 30 minutes at one time and less than 2 hours in an 8 hour workday, and sit less than 30 minutes at one time and less than 2 hours in an 8 hour workday. (Tr. 1009). He also determined Claimant required an assistive device for ambulation – a walker as needed. Dr. Rana estimated Claimant could walk a half of a block without assistance. He stated Claimant could not work

10

on a sustained and continuous basis in a job because of severe low back pain. Dr. Rana also stated Claimant's pain medications limited her functional ability to work. He did not estimate how often Claimant would be required to be absent from work due to her condition. (Tr. 1010).

The ALJ also gave Dr. Rana's opinion "little weight." He again relied upon his interpretation of the x-ray evidence. He also stated Dr. Rana's treatment notes did not support the functional limitations found by Dr. Rana. (Tr. 18). This Court has already determined that the ALJ's analysis of the x-ray evidence only considered the portions of the evidence which did not support Dr. Rubertus' and Dr. Rana's opinions while ignoring the portion which was more supportive. Further, Dr. Rana's treatment records found Claimant had decreased range of motion with back flexion and extension and described the pain of moderate intensity. The ALJ appears to have relied most heavily in his conclusion that Dr. Rana's notes did not support his findings of limitation upon the September of 2012 reflection that Claimant's condition was stable and non-progressive. (Tr. 993). However, this statement does not translate into a finding that the condition as it existed did not result in the functional limitation found by Dr. Rana in his opinion. The ALJ's reasoning would result in the award of

benefits only for medical conditions which become progressively worse with time - the regulations do not support such a requirement. On remand, the ALJ shall re-evaluate Dr. Rana's opinion based upon the entire longitudinal record and based upon Claimant's medical impairments as they existed and as they limit Claimant's activities.

Additionally, to the extent the ALJ has given more weight to the opinions of the consultants than those of the treating physicians, he shall provide a further explanation for doing so than the medical record supports their findings since the treating physicians' records make up the medical record.

**Discussion of Probative Evidence**

Claimant also asserts the ALJ failed to discuss various medical evidence. Specifically, Claimant contends the ALJ failed to discuss (1) evidence of neuroforaminal stenosis revealed in a November 2010 lumbar CT scan which was worsening; (2) the totality of the evidence of limitations posed by Claimant's right knee condition; (3) evidence of limitation in Claimant's lower back and right knee; (4) evidence of Claimant's increased pain; (5) evidence that Claimant's financial, transportation, and gastrointestinal difficulties limited her ability to obtain pain relief; (6) the bone thinning and osteopenia in Claimant's right hip; (7) evidence

12

of bilateral hammertoe deformities, neuropathy, and peripheral vascular disease; (8) Claimant's use of a walker recommended by her physicians; and (9) Claimant's repeated falls and their effect upon his RFC determination.

Certainly, it is well-recognized in this Circuit that an ALJ is not required to discuss every piece of evidence. Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996). However, he is required to discuss uncontroverted evidence not relied upon and significantly probative evidence that is rejected. Id. at 1010. An ALJ "is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007). On remand, the ALJ should consider the effect of all of Claimant's conditions upon her ability to engage in work activity. These are not mere isolated reports of conditions but are part and parcel to Claimant's overall condition and the medical impairments which the ALJ has identified as severe. As such, they should be addressed by the ALJ in his decision and the basis for his rejection of the conditions as further evidence of limitation.

## Conclusion

The decision of the Commissioner is not supported by

13

substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 20th day of July, 2015.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE